CARRIE I. KEENE, administratrix, *vs.* NEW ENGLAND
MUTUAL ACCIDENT ASSOCIATION.

Suffolk.    November 23, 1893. — March 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Accident Insurance — Burden of Proof— " Voluntary Exposure to unnecessary
Danger " — Use of "Due Diligence for Personal Safety."*

In an action upon a policy of insurance against bodily injuries effected " through
external, violent, and accidental means," containing provisos that no claim shall
be valid thereunder " when the death or injury may have happened in conse-
quence . . . of any voluntary exposure to unnecessary danger," and that the
assured " is required to use all due diligence for personal safety and protec-
tion," the burden of proof is on the defendant to show that the assured did thus
expose himself to such danger, or did not use such due diligence.

A policy of insurance was issued against bodily injuries effected " through external,
violent, and accidental means," containing provisos that no claim should be
valid thereunder " when the death or injury may have happened in consequence
. . . of any voluntary exposure to unnecessary danger," and that the assured
" is required to use all due diligence for personal safety and protection." The
assured was killed by being struck by a detached railroad car, which had been
kicked there by an engine, and the sight of which was cut off by his umbrella,
while crossing the railroad tracks at a point where from one thousand to two
thousand persons a day had been in the habit of crossing for years unopposed,
although notices had been posted up by the railroad corporation to prohibit it.
*Held*, in an action on the policy, that the act of the assured was not necessarily
to be deemed a violation of the provisions of the policy ; and that the plaintiff
was entitled to go to the jury.

CONTRACT, by the administratrix of the estate of Fred L.
Keene, upon a policy of insurance against accident, issued by
the defendant to the intestate, who was killed while crossing
the tracks of the Old Colony Railroad Company at Brockton,
on June 4, 1891.    Trial in the Superior Court, before *Fessenden*,
J., who, at the defendant's request, ruled that the action could
not be maintained, and directed the jury to return a verdict for
the defendant · and the plaintiff alleged exceptions.    The ma-
terial facts appear in the opinion.

The case was argued at the bar in November, 1893, and after-
wards was submitted on the briefs to all the judges.

*E. M. Johnson & J. W. Keith*, for the plaintiff.

*I. R. Clark*, for the defendant.

ALLEN, J.   The defendant insured the deceased "against personal bodily injuries effected . . . through external, violent, and accidental means, within the intent and meaning of the provisos and conditions" recited in the policy.   The provisos and conditions material to be considered are as follows: "No claim shall be valid under this certificate when the death or injury may have been caused by duelling, fighting, wrestling," or "may have happened in consequence . . . of racing of any description, or of any voluntary exposure to unnecessary danger, hazard, or perilous adventure."   "The certificate holder is required to use all due diligence for personal safety and protection."   "For injuries received while . . . walking or being on the road-bed or bridge of any railway, the certificate holder or his beneficiary shall be entitled only to the indemnity or death loss provided in the classification of this association for railway employees insured to cover such risks."

Death through external, violent, and accidental means having been proved, the burden of proof was on the defendant to show a voluntary exposure to unnecessary danger, or a want of due diligence.   *Freeman* v. *Travelers' Ins. Co.* 144 Mass. 572.   *Badenfeld* v. *Massachusetts Accident Association*, 154 Mass. 77.

The question is not the same as would arise in an action against the railroad company to recover damages for the accident which caused the death.   In such action, the relation of the deceased to the railroad company would probably be that of a bare licensee, to whom the railroad company owed no duty except to abstain from reckless and wanton conduct.   *Redigan* v. *Boston & Maine Railroad*, 155 Mass. 44, and cases there cited.   Moreover, there may have been such a want of positive care on his part with reference to approaching cars as would prevent a recovery, the burden being upon the plaintiff in such action to prove due care affirmatively.

In the present action the burden of proof is different, and the questions of due diligence and of voluntary exposure to unnecessary danger arise, not upon general principles of the law of negligence, but upon the construction of the contract of insurance against accidents.   Clearly a contract of indemnity against acci-

dents should be construed with more liberality to the assured than the rules of common law, if the same person seeks under them to put the responsibility for his accident upon another.

Looking then at the policy with reference to the subject of the contract of insurance, the first provision relied on in defence is against "any voluntary exposure to unnecessary danger, hazard, or perilous adventure." A voluntary exposure to necessary danger is not forbidden, nor an involuntary exposure to unnecessary danger. The policy recognizes that there are some dangers which it is necessary to encounter, as, for example, where there is a chance to rescue persons in deadly peril. See *Tucker* v. *Mutual Benefit Co.* 50 Hun, 50. There are other dangers which one usually need not encounter if he knows of their existence long enough beforehand, as, for example, the danger from a runaway horse or a coming car; and a merely inadvertent and unintentional exposure to a danger of this kind is not voluntary, but involuntary. A voluntary exposure to unnecessary danger implies a conscious intentional exposure; something which one is consciously willing to take the risk of. By taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents resulting in whole or in part from his own inadvertence. Great negligence will not necessarily defeat a fire policy. *Johnson* v. *Berkshire Ins. Co.* 4 Allen, 388. And in the present policy against accidents, upon the evidence, although the jury might well find a voluntary exposure to danger, we cannot say that it would be bound, as matter of law, to do so. It did not appear that the deceased was a trespasser. The testimony tended to show that it was a common thing for persons to cross the railroad tracks all along there where the deceased was crossing. Notices were indeed posted up by the railroad company to prohibit it; but no other attempt was made to stop the practice. Two witnesses testified that from one thousand to two thousand persons a day crossed there, and this habit of so crossing had continued for years. This would go to show that the deceased was not a trespasser. The deceased was not attempting to walk upon the track, or to remain upon it; but he was simply crossing, at a quick pace. He was hit, not by an engine with its noise, but by a detached car, which had been kicked along there, the sight of which was cut off by his umbrella.

Construing the clause in the policy against "voluntary exposure to unnecessary danger" with reference to the subject of the contract, and also in connection with the other provisions against intentional acts, which are found in the same sentence, the act of the deceased as described by the witnesses was not necessarily to be deemed a violation of it.

The next provision is, "The certificate holder is required to use all due diligence for personal safety and protection." This phrase is very general, and certainly it does not mean that the assured must guarantee himself against accidents, nor do we think it means that he shall not recover for any accident to which some want of care on his part may have contributed. He is not required to use all possible diligence, but only all due diligence. Due diligence or care is sometimes said to be reasonable diligence or care, and reasonable care is sometimes said to be the ordinary care of prudent persons. It is not a precise term, but a relative one. In an accident policy, it would not be reasonable to hold that this clause requires of the assured a higher degree of diligence than prudent persons are accustomed habitually to use. Under such a construction, few persons would care to have an accident policy. The due diligence required is not inconsistent with inadvertence, nor with running such risks as prudent and cautious persons habitually run; and upon the evidence the act of the deceased was not necessarily to be deemed a violation of this provision.

This conclusion is made the more clear by a reference to the later provision, which allows a reduced recovery for injuries received while walking or being on the road-bed or bridge of a railway. If walking on the road-bed of a railway will not defeat a claim under the policy, it is not to be supposed that the contract means that merely crossing a railroad track should necessarily have that effect. Whether merely crossing the railroad should in the present case reduce the plaintiff's claim to the lower classification, we do not determine, as this question was not presented by the ruling at the trial, and has not been argued by the defendant. See as to this *Duncan* v. *Preferred Accident Association*, 27 Jones & Spen. 145.

The defendant has strongly relied on *Tuttle* v. *Travellers' Ins. Co.* 134 Mass. 175. In that case, the deceased was on a dark

evening running along on a railroad track, and was killed by a train which came up from behind. He made the railroad track his path for travel, and did it unnecessarily. A reference to the original papers in the case shows that it appeared in evidence that the railroad station to which he was going was on the same side of the tracks as the hotel from which he started, and that it could be reached from the hotel by public ways without crossing any tracks. A plan was also referred to, which (speaking from present memory) showed that the convenient and natural mode of going from the hotel to the station, especially in the evening, was by the public ways. Under these circumstances it was held that the act of the deceased in going upon and along the railroad track on a dark evening, when trains were coming and going over it, was an exposure to an obvious and unnecessary danger, and was not using all due diligence for personal safety and protection. That case in its facts and circumstances was quite different from the present.

For these reasons, in the opinion of a majority of the court, the plaintiff was entitled to go to the jury upon the evidence.

*Exceptions sustained.*