CARRIE I. KEENE, administratrix, *vs.* NEW ENGLAND MUTUAL ACCIDENT ASSOCIATION.

Suffolk.     March 20, 1895. — June 28, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Accident Insurance — Walking on Railroad Track.*

Where the assured, having left the cars on the side nearest a station, passes in front of the engine attached to the train to a platform, and as he steps therefrom upon another railroad track to cross it to go to a street, is struck by a moving freight car and killed, he is within that clause of a policy of insurance which provides that for injuries received while " walking or being on the roadbed or bridge of any railway," the beneficiary shall be entitled to a certain limited indemnity only.

CONTRACT, by the administratrix of the estate of Fred L. Keene, upon a policy of insurance against accident, issued by the

defendant to the intestate, who was killed while crossing the tracks of the Old Colony Railroad Company at Brockton, on June 4, 1891. At the trial in the Superior Court, before *Hopkins*, J., it appeared that, by the policy which insured the plaintiff's intestate against bodily injuries from " external, violent, and accidental means," the defendant agreed to pay $5,000 to the beneficiary, who was the insured's wife, and is the plaintiff, if death should result to the insured from injuries alone ; that it provided that no claim should be valid when the death or injury may have happened in consequence " of any voluntary exposure to unnecessary danger, hazard, or perilous adventure " ; and that it contained a condition that for injuries received while " walking or being on the road-bed or bridge of any railway, the certificate holder or his beneficiary shall be entitled only to the indemnity or death loss provided in the classification of this association for railway employees insured to cover such risks." The policy also contained the following provision : " In the event of a certificate holder being either fatally or otherwise disabled, in consequence of his engaging temporarily or otherwise in any act or occupation of a more hazardous classification than is indicated by the occupation stated in his application, according to the manual in use by this association at the time of injury, or if not specially mentioned in said manual, approximating thereunto, this certificate shall not be wholly forfeited or voided, but the beneficiary or certificate-holder shall be entitled only to the benefit or indemnity provided in said manual for such more hazardous occupation."

There was evidence tending to show that the intestate was employed in Boston as a salesman in a leather house, and on the morning of June 4, 1891, went to Brockton by cars, arriving about 9 A. M. ; that he left the cars on the side nearest the station, and, as it was raining, opened his umbrella, passed in front of the engine attached to the train, to the platform No. 2 on the plan which was in evidence; and that, as he stepped from the platform upon the railroad track to the east, in order to cross the track to the street known as Railroad Avenue, upon the east of the railroad tracks, he was struck by the first of two freight cars which had been kicked from the rear of a train consisting of an engine and several freight cars, which had pulled out to the south from

the station at the time of the arrival of the passenger train, and which, at the time the plaintiff was struck by the detached cars, was standing still upon the track, at some distance south. The detached cars were in charge of a brakeman who was on the top of the car which struck the plaintiff's intestate, and this brakeman called out to the plaintiff's intestate just before he was struck, but not in time to prevent the accident. One of the plaintiff's witnesses testified " that, when he first saw Mr. Keene, he was just stepping from platform No. 2 into the middle of the track next east, and that he was walking northeast obliquely across the track so that the freight car hit his right shoulder first." At the time of the accident the wind was southeast; the passenger engine was blowing off steam, and the plaintiff's intestate was about five feet back from the forward trucks of the passenger engine when struck first by the freight cars. He was thrown to the ground, and both cars passed over his body. It appeared in evidence that it was the custom of the railroad company to switch freight cars by passenger trains while standing at the station delivering and receiving passengers. It also appeared that it was customary for persons wishing to cross to Railroad Avenue to cross the tracks of the railroad in front of the station; that many hundred persons passed there daily; and that this custom had prevailed for many years. The plaintiff called many witnesses, who testified to their knowledge that the railroad company had never forbidden, prevented, or obstructed the public from so crossing to Railroad Avenue at this point.

When the plaintiff's intestate was struck by the cars, he was holding his umbrella over his head in the direction from which the rain was coming, which was nearly the same as the direction in which the freight cars were coming.

The secretary and general manager of the defendant corporation since its organization in 1884 produced the manual in use by the corporation at the date of the policy declared upon, and testified that the amount of death loss provided in the classification for railway employees insured to cover risks for walking or being on road-beds of railroads was under classification D, Inspector of Roadways, or Supervisor, and was in amount $1,500 for death benefit upon a $5,000 policy, and that $1,500 was the highest sum.

The defendant asked fourteen requests for rulings, not material to be considered, all of which the judge declined to give except two. The fourteenth request was as follows: "Mr. Keene was 'walking or being' upon the road-bed when he met his death, within the terms and conditions of the policy."

The judge, among other instructions to the jury, gave the following: "There does not seem to be much dispute as to the way and manner in which he came to his death. The place where he received his injury was upon the road-bed of the railway at that point. It is of importance for you to determine, with reference to the place, whether or not he was rightfully there, or whether or not he was there as a trespasser, because, if you should find that he had no right where he was killed, certain consequences would flow which are important to the parties to this suit. His line of travel, as indicated by the evidence, was from the platform diagonally across the tracks of the railroad to a place or street called Railroad avenue, upon the other side. The question is, whether or not he had a right to pass over the railroad at that point. If he had the right to pass over it, then the consequences that flow from the finding of that fact are two at least. In the first place he would not then be walking on or being on the road-bed of any railway within the meaning of the policy, and the right of recovery, if any exists in this case, would be $5,000 and interest. If he was a trespasser in crossing as he did, he would be walking or being on the road-bed of a railway within the meaning of the policy, and the right of recovery, if it exists in this case, would be $1,500 and interest. Then, too, if he had a right to cross where he did cross, that would be a circumstance which you would take into consideration in determining whether or not, under the instructions I shall give you, he at that time wilfully exposed himself to unnecessary danger; and perhaps the inference which you would draw, in case you found he had a right to be where he was, would be other and different from what you would find and draw in case you should find he had no lawful right to be where he was at the time he received the injury. . . . For injuries received while walking or being on the road-bed or bridge of any railway, the certificate holder or his beneficiary shall be entitled only to the indemnity or death loss

provided in the classification of this association for railway employees insured to cover such risks. Under that condition of the policy, evidence has been offered that the amount that would be paid for a death loss for railway employees, insured to cover such risks in this case, would be not more than $1,500. The claim on the part of the defendant is that the deceased was killed while walking or being on the road-bed of a railway, and they invoke that condition of the policy in order to diminish the amount which shall be paid, if, under the rules of law, anything is to be paid on account of his death. He may be said to have been rightfully upon the road-bed, and would not be a trespasser, provided the railway company had expressly granted permission to him, or to the public generally, to cross at that point."

The judge also instructed the jury that, if there had been such a universal, uniform, and long continued use by the general public for a crossing of the land where the deceased was killed as to give it the character of a line of travel, and such that it might fairly be inferred to be known to the railroad company, the deceased would be presumed to have known of the fact, and to be where he was rightfully, and not as a trespasser.

The judge, in instructing the jury as to what constituted voluntary exposure to unnecessary danger, followed the former decision, reported 161 Mass. 149.

The jury returned a verdict for the plaintiff for the full amount of the policy, $5,000, and interest thereon from October 10, 1891 ; and the defendant alleged exceptions.

*I. R. Clark,* for the defendant.

*E. M. Johnson, (J. W. Keith* with him,) for the plaintiff.

HOLMES, J.    The rulings asked are disposed of by the former decision in this case. *Keene* v. *New England Mutual Accident Association,* 161 Mass. 149. So also are most of the matters excepted to in the charge. The jury were instructed that, if there had been such a universal, uniform, and long continued use by the general public for a crossing of the land where Keene, the deceased, was killed, as to give it the character of a line of travel, and such that it fairly might be inferred to be known to the railroad company, the deceased would be presumed to have known of the fact, and to be where he was rightfully, and not as a tres-

passer.   If this were an action against the railroad company, and Keene had been upon the track simply as a member of the public, these instructions would be open to the criticism made in *Chenery* v. *Fitchburg Railroad*, 160 Mass. 211, 212.   See also *Wright* v. *Boston & Albany Railroad*, 142 Mass. 296.   But the question is with regard to the rights of a passenger to get off the location of the railroad within which he finds himself by right.   With regard to that, it already has been decided to be a question for the jury. It is not necessary to consider whether the mode of statement which was adopted was right in its way of reaching the result. The result was right as applied to this case.   See also *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203, 208.

The instructions as to what constituted voluntary exposure to unnecessary danger followed the former decision.   Cases as to what would be negligence as between the deceased and the railroad are not in point.

The only question left open by the former decision is whether Keene was " walking or being on the road-bed " of a railway, within the meaning of the policy.   If he had been walking along the track longitudinally, he clearly would have been within the clause.   *Piper* v. *Mercantile Mutual Accident Association*, 161 Mass. 589.   Perhaps, if he had been crossing where there was a public way, he would not have been within it.   This case is nearer to the line.   The words of the policy contain no exception, and in view of the plain purpose of the provision, which is to exclude liability for a well known danger, we are of opinion that the implied exception, if any, does not extend to this case. On this point the exceptions must be sustained, unless the plaintiff consents to a reduction of the judgment to fifteen hundred dollars.

*Exceptions sustained.*