CHARLES A. MILLIKEN, and others,

*vs.*

IRA H. RANDALL.

Kennebec.    Opinion May 7, 1896.

*Sales.    Contracts.    Burden of Proof.    Pleadings.*

On April 2, 1890, the plaintiffs and the defendant entered into a written contract wherein the plaintiffs agreed to sell and deliver to the defendant, and the defendant agreed to purchase and receive all of the ice in a certain ice house, the quantity of which was agreed by the parties to be three thousand and thirty-six tons. The ice was to be delivered by the plaintiffs, and at their expense, on board vessels to be furnished by the defendant at Hallowell. where the ice was stored, properly dunnaged for a voyage to New York.

One of the provisions of the contract was as follows: "Said ice and house in which it is stored shall be under the care of the party of the first part, [the plaintiffs] until said ice is all shipped, without charge or expense to the party of the second part, or until July 1st, 1890, after which date the expense of the care of said ice and rental of the wharf where it was stored shall be at the expense of the party of the second part." Subsequently the contract was modified by the parties to the extent that the defendant should himself transfer the ice from the house to the vessel and be allowed therefor the actual cost of the same. The defendant commenced taking and shipping ice in the latter part of June and completed the shipments about the 19th of July, 1890. The plaintiffs sued to recover the contract price for the ice, less the amount of payments made upon account and the cost of taking the ice from the house

to the vessel. The plaintiffs' declaration contained two counts, in one of which the contract was declared upon; the other was the common count upon the account annexed for ice sold and delivered. It was contended by the defendant and set up in his brief statement under the general issue, that by reason of the plaintiffs' failure to take such care of the ice and the house in which it was stored up to July 1st, as the contract called for, a large quantity of the ice was lost by wasting and melting. This was one of the principal issues at the trial,—much evidence being introduced upon both sides as to the manner in which the ice and house were cared for between the date of the contract and the first day of July following.

The presiding justice instructed the jury that the burden of proving that the plaintiffs had not taken reasonable and proper care of the ice was upon the defendant. *Held;* that this instruction was erroneous.

*Also;* that the obligations assumed by the plaintiffs in the written contract were not only to sell and deliver the specific ice therein referred to, but also to exercise reasonable diligence in taking care of the house and its contents until July 1st, and that the agreement of the defendant was not simply to pay the sum named in the contract for the ice, but that this sum included compensation for the care of the ice during the period named.

*Also;* that the burden was upon the plaintiffs to satisfy the jury, by a reasonable preponderance of the whole evidence, that they had performed this substantive portion of their contract.

*Also;* That the allegation in the defendant's brief statement, that the plaintiffs' care of the ice was of such a negligent, careless and unskilful character that a large quantity of the ice wasted and melted away, was unnecessary; and that the defense could have been made under the general issue. The defendant's plea and brief statement set up no new matter in confession and avoidance, but was simply an allegation that the plaintiffs had not performed an important obligation which the contract imposed upon them; it was a denial of the allegation of due care contained in the plaintiffs' writ.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action of assumpsit, the writ containing two counts. The first count was on an account annexed to recover a balance due for a stack of ice, sold to and shipped by the defendant; the second, was on a breach of contract covering the same transaction, the damages claimed being $2000. The defendant pleaded the general issue, and also claimed to recoup the sum of $2000, for various reasons set forth in his brief statement.

The jury returned a verdict in favor of the plaintiffs for $2,100.17, and a special verdict as follows:

"Did the defendant, when he took the ice from the stack, weighed it, and loaded it in his vessels, accept it as ice within the meaning of the contract? Answer. Yes."

The contract between the parties, except as modified by them and stated in the opinion, was as follows:—

"This agreement made this 2d day of April, 1890, between E. Milliken's Sons, of Augusta, parties of the first part, and Ira H. Randall, of Augusta, party of the second part, witnesseth.

"Said parties of the first part, for a valuable consideration and the mutual agreements hereinafter contained hereby covenant and agree to sell and deliver to said party of the second part three thousand and thirty.six tons of ice as this day measured and agreed to by said parties, at forty-five cubic feet to the ton, said ice to be delivered by said party of the first part f. o. b. on board vessels to be furnished by the party of the second part at the place of loading in Hallowell, Maine, and properly dunnaged for a voyage to New York, for the sum of two and fifty one-hundredths dollars per ton, to be paid as follows, to wit:

"One. dollar per ton according to said measurement upon the execution of this contract and the balance of one and fifty-one hundredths dollars per ton according to said measurement, upon each cargo of ice shipped; Provided that when said ice is shipped any that may be considered worthless, owing to dirt or sediment, shall be weighed and an account of the sum kept by the weigher and deducted from the whole amount to be paid for as above; Provided further that in case of the loss of a part or the whole of said ice by freshet, the party of the second part shall have the remainder not so destroyed by measuring and deducting from the whole amount of ice, as measured aforesaid, the apparent loss, and the party of the second part shall only pay for the quantity of ice remaining after said deduction:

"Said ice and house in which it is stored shall be under the care of the party of the first, until said ice is all shipped, without charge or expense to the party of the second part, or until July 1, 1890, after which date the expense of the care of said ice and rental of the wharf where it is stored shall be at the expense of the party of the second part:

"And it is hereby further mutually agreed that said ice shall be shipped before August 1st, 1890:

"The party of second part, in consideration of said sale hereby covenants and agrees to purchase and receive said quantity of ice aforesaid, to be shipped as aforesaid and to pay therefor as aforesaid.

"Said party of the second part is to insure said ice without expense to the party of the first part and is to pay for said ice as above specified in case of destruction by fire.

"It is further agreed between the parties that said party of the second part shall not be obliged to ship said ice by July 1, 1890, provided he pays for the care of said ice and rental of said wharf as aforesaid after July 1st, 1890.

"It is further mutually agreed that when said ice is all shipped the whole quantity of ice shall be determined and paid for according to the measurements hereinbefore specified.

"In witness whereof have hereunto subscribed their aforesaid names on the day and year as hereinbefore written.

Elias Milliken's Sons.<br>Ira H. Randall."

The opinion states the case.

*O. D. Baker and L. C. Cornish*, for plaintiffs.

*H. M. Heath and O. A. Tuell*, for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WISWELL, JJ.

WISWELL, J.    On April 2, 1890, the parties to this suit entered into a written contract wherein the plaintiffs agreed to sell and deliver to the defendant, and the defendant agreed to purchase and receive, all of the ice in a certain ice-house, the quantity of which was agreed by the parties to be three thousand and thirty-six tons.    The ice was to be delivered by the plaintiffs, and at their expense, on board vessels to be furnished by the defendant at Hallowell, where the ice was stored, properly dunnaged for a voyage to New York.

One of the provisions of the contract was as follows:    "Said ice and house in which it is stored shall be under the care of the party

of the first part, [the plaintiffs] until said ice is all shipped, without charge or expense to the party of the second part, or until July 1st, 1890, after which date the expense of the care of said ice and rental of the wharf where it is stored shall be at the expense of the party of the second part."

The contract price was $2.50 per ton, of which one dollar was to be paid at the execution of the contract and the balance as each cargo was shipped. Subsequently the contract was modified by the parties to the extent that the defendant should himself transfer the ice from the house to the vessel and be allowed therefor the actual cost of the same. The defendant commenced taking and shipping ice in the latter part of June and completed the shipments about the 19th of July.

In this action the plaintiffs seek to recover the contract price of $2.50 per ton for three thousand and thirty-six tons and for nineteen days' wharfage after July 1st, credit being given for the payments made upon account and for the cost of taking the ice from the house and delivering the same upon vessels at thirty-one cents per ton. for twenty-four hundred and ten tons. The plaintiffs' declaration contains two counts, in one of which the contract is declared upon, the other is the common count upon an account annexed for ice sold and delivered.

It was contended by the defendant, and set up in his brief statement under the general issue, that by reason of the plaintiffs' failure to take such care of the ice and the house in which it was stored up to July 1st, as the contract called for, a large quantity of the ice was lost by wasting and melting. This was one of the principal issues in the trial, much evidence being introduced upon both sides as to the manner in which the ice and house were cared for between the date of the contract and the first day of July following.

The presiding justice, throughout his charge, instructed the jury that the burden of proving that the plaintiffs had not taken reasonable and proper care of the ice was upon the defendant. For instance, after stating to the jury that the plaintiffs claimed to recover for. the full amount specified in the contract at the price

stipulated of $2.50 per ton for three thousand and thirty-six tons, he said: "There is no controversy between the parties in regard to this item being correct, unless the defendant taking the burden upon himself has satisfied you under the rules of law that I must give you, that he is entitled to a deduction from it." And again, in referring to the contention as to the care exercised by the plaintiffs of the ice-house and its contents, he said: " Now I have said to you that the burden is upon the defendant in making out his defense for a claim of reduction by recoupment, to satisfy you affirmatively by some preponderance of the evidence, of the issues of facts he raises, involving the fact relied upon and also the amount of damage sustained, the amount which he is entitled to have deducted as a loss sustained, by these grounds." In speaking of the material used by the plaintiffs for the protection of the ice while in the house, which the defendant claimed was improper for that purpose, he said: " But he must prove to you in the first place that the plaintiffs were guilty of negligence, of a want of due care in using it at all."

We think that these instructions, all to the effect that the burden of proving that the plaintiffs had not exercised reasonable and ordinary diligence in the care of the ice-house and its contents, were erroneous. The obligations assumed by the plaintiffs in the written contract were not only to sell and deliver the specific ice therein referred to, but also to exercise reasonable diligence in taking such care of the house and its contents until July 1st, unless the ice was sooner shipped, that there should be no unnecessary shrinkage of the ice by melting. The natural waste of the ice at that season of the year was a loss which, under the contract, fell upon the defendant, but he was not responsible for the loss occasioned by any failure of the plaintiffs to perform their part of the contract. We think this was a substantial part of the contract. The agreement of the defendant was not simply to pay $2.50 per ton for the ice, but this sum included compensation for taking care of the ice until July 1st, as well as for the delivery of the same upon vessels to be furnished by the defendant.

Inasmuch as the defendant himself took the ice from the house,

it was perhaps unnecessary for the plaintiffs in the first instance to introduce any evidence in regard to the fulfilment by them of this portion of their contract; but when the claim was made, that by reason of the plaintiffs' failure to perform their contract in this respect, the defendant did not receive as much of the ice as he should have, we think that the burden was upon the plaintiffs to satisfy the jury by a reasonable preponderance of the whole evidence that they had performed this substantive portion of their agreement.

They had contracted to care for the property. They alleged performance in their special count; it was incumbent upon them to prove it. And this is equally true whether they relied upon their special or common count.

If the ice had not been taken from the house by the defendant, it would have been incumbent upon the plaintiffs to prove performance of the obligation assumed by them in the contract, before they would have been entitled to recover, because of this fact the burden of introducing evidence in support of the contention, sometimes called the weight of evidence, rested upon the defendant, but the burden of proof did not shift.

This is in accordance with the general rule as stated in Greenleaf on Evidence, Vol. I, § 74, "the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue." In Wharton on Evidence, Vol. I, § 356, it is said: "He who in a court of justice undertakes to establish a claim against another must produce the proof necessary to make good his contention."

It is true that the defendant set up in his brief statement that the plaintiffs' care of the ice from April 2nd to July 1st, 1890, was of such a negligent, careless and unskilful character that a large quantity of the ice wasted and melted away. But this was an entirely unnecessary allegation; the defense could have been made under the general issue, while the exercise of due care by the plaintiffs was a necessary allegation in their declaration. The defendant's plea and brief statement set up no new matter in confession and avoidance, but was simply an allegation that the

plaintiffs had not performed an important obligation which the contract imposed upon them; it was a denial of an allegation contained in the plaintiffs' writ.

The following cases well illustrate the rule in regard to the burden of proof. *Funcheon* v. *Harvey*, 119 Mass. 469, was an action to recover the freight due under a charter party, by the terms of which the plaintiff was to take a cargo on board with all convenient speed, and proceed direct to a port of delivery; the declaration alleged that the plaintiff performed all things in the charter to be performed by him. The answer was a general denial and an allegation that by reason of the failure of the plaintiff to take on board the cargo with all convenient speed and to proceed direct to the port of delivery, the cargo was wholly destroyed. The issue was whether the vessel unnecessarily delayed in her port of departure and deviated upon the voyage. The court held that the burden of proof upon that issue was upon the plaintiff, and that he was bound to prove that he had performed that as well as all other stipulations of the charter party.

In *Phipps* v. *Mahon*, 141 Mass. 471, the plaintiff declared upon an account annexed for work and labor and offered evidence that his work was reasonably worth a certain sum; the defendant answered with a general denial and alleged and offered evidence tending to prove that the work was done under a contract for a definite sum, which had been paid. The court held that the burden of proof did not shift but was on the plaintiff to prove the contract alleged by him upon all the evidence in the case.

In *Starratt* v. *Mullen*, 148 Mass. 570, the action was for goods sold and delivered and for money lent. The defense set up was that the goods were delivered and the money given by the plaintiff to the defendant in payment for the use of money supplied the plaintiff by the defendant. The court held that the burden of proof did not shift but was on the plaintiff throughout to prove that the goods were sold and that the money was lent. The court said, "if he [the plaintiff] declares on a special contract he must prove its terms as alleged, and on the same principle, if he declares on the common count, he must prove that the goods or

services were furnished for a reward to be paid thereafter in money."

We do not think that the cases cited by plaintiffs' counsel, *Freeman* v. *Travelers Ins. Co.*, 144 Mass. 572; *Coburn* v. *Travelers Ins. Co.*, 145 Mass. 226; and *Keene* v. *Accident Association*, 161 Mass. 149, are applicable to the question under consideration. These cases all involve the construction of accident insurance policies, and are decided upon the ground that "stipulations added to a principal contract, which are intended to avoid the defendant's promise by way of defeasance or excuse, must be pleaded in defense and must be sustained by evidence,—they are in the nature of provisos." In the case at bar, the stipulation of the contract in relation to the care of the property, is not a proviso; it was not intended as a matter of defeasance or excuse, but imposed upon the plaintiffs a duty which they must allege and sustain by evidence.

It is urged that these instructions were unimportant; that on account of the preponderance of the evidence in favor of the plaintiffs upon this issue, the jury's finding would have been the same if the instructions had been that the burden of proof was upon the plaintiff; but this was an issue of fact. We cannot assume what the verdict would have been if the instructions had been otherwise in this respect.

The other exceptions need not be considered. The entry must be,

*Exceptions sustained.*