BATEMAN, Respondent, v. TRAVELERS INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, February 7, 1905.

1. ACCIDENT INSURANCE: "Voluntary Exposure to Danger:" Demurrer to Evidence. In an action on a policy of insurance against bodily injury sustained "through external, violent and accidental means," where the deceased, a train porter, on his own train being delayed, was sent to flag approaching trains, as it was his duty to do, and was run over and killed, evidence that he was seen lying on the track and partly raised himself just before he was struck, would not warrant the sustaining of a demurrer to the evidence, because inferences are deducible from the situation other than a voluntary exposure.

2. ——: ——: **Sitting on Railroad Track.** That the deceased sat down on the track while waiting for a train to approach, was not conclusively a voluntary exposure to unnecessary danger.

3. ——: ——: **Going to Sleep on Track.** That he went to sleep on the track was not a "voluntary" exposure to such danger if he unconsciously fell asleep, or unless he went to sleep intentionally.

4. ——: **"Unnecessary Danger."** The expression "unnecessary danger" as used in a policy of insurance against accidents, where an exception is made in case of voluntary exposure to unnecessary danger, means danger not incident to the duty or avocation of the insured.

5. ——: **"Voluntary Exposure."** The expression "voluntary exposure" in such a policy means a danger incurred consciously by the insured and of his own volition.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Sebree & Farrington* and *Woodruff & Mann* for appellant.

(1)   The contract sued on, between insurer and insured, contains an express limitation on the liability of defendant. It was agreed between the parties that if injury or death happened to the insured by reason of his voluntarily exposing himself to unnecessary danger, then the defendant should not be liable. The authorities all agree that the insurance company may thus limit its liability to pay. Bean v. Ins. Co., 50 Mo. App. 464; 2 May on Insurance (3 Ed.), secs. 530, 531. (2)   The question is not a question of negligence, but of contract, which the parties made and had a right to make. Overbeck v. Ins. Co., 94 Mo. App. 453, 68 S. W. 236. (3)   Death by "voluntary exposure to unnecessary danger," within the meaning of the exemption clause, is where the insured intentionally does some unnecessary act, which reasonable and ordinary pru-

dence would pronounce dangerous, and his death results in consequence thereof. Tuttle v. Ins. Co., 134 Mass. 175; Morel v. Ins. Co., 4 Bush. 535; Sawtelle v. Railroad, 15 Blatchf. 216.

*A. P. Tatlow* and *Sherwood, Young & Lyon* for respondent.

(1) There was evidence to sustain the finding of the lower court, sitting as a jury, and the judgment, will, therefore, remain undisturbed. James v. Ins. Co., 148 Mo. 15, 49 S. W. 978; Davis v. Railroad, 46 Mo. App. 180; Cohn v. Kansas City, 108 Mo. 387, 18 S. W. 973. (2) The burden of proof was upon defendant company, to show that the deceased voluntarily exposed himself to unnecessary danger. Jamison v. Ins. Co., 104 Mo. App. 306, 78 S. W. 812. (3) The second instruction was properly refused, not only because there was no evidence that the deceased voluntarily exposed himself to unnecessary danger, but also because it fails to submit that issue to the court sitting as a jury. (4) "There being several inferences deducible from the facts which appear, and equally consistent with all those facts," the defendant [plaintiff] has not maintained the proposition upon which alone it [he] would be entitled to recover. . . . When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." Smart v. Kansas City, 91 Mo. App. 586; Acc. Ass'n v. Merrit, 98 Mich. 338, 57 N. W. 169; Epperson v. Cable Co., 155 Mo. 382, 50 S. W. 795, 55 S. W. 1050; Fuchs v. St. Louis, 133 Mo. 196, 31 S. W. 115, 34 S. W. 508.

GOODE, J.—This is an action on an insurance contract. The plaintiff's deceased son was insured against bodily injury sustained through external violent and accidental means, the indemnity being payable

to plaintiff in case of her son's death from a cause covered by the policy. It is conceded the deceased lost his life by an accident sustained through external violence, and the death indemnity is due unless the insurance company is exonerated by the conduct of the deceased just prior to his death having constituted "voluntary exposure to unnecessary danger." The policy exempted the defendant from liability for an accident resulting from such conduct on the part of the insured. The deceased was a railroad porter on the St. Louis & San Francisco Railroad. The night he was killed the train he worked on was delayed in the course of its run and he was sent back to flag any train that might approach from the rear. This was his duty at the time. A train came along and killed the deceased. The engineer of the train testified to seeing him lying on the track as the train approached and that just before it struck him he partly raised as if about to get up. The engineer neither knew why the deceased was lying on the track nor if he was awake or asleep. This was all that was shown about what happened from the time the deceased was sent from his own train until he was run over by the other one.

A declaration of law in the nature of a demurrer to plaintiff's case was asked but properly refused. Beyond doubt the question of whether the deceased was killed on account of a voluntary exposure to danger was for the court sitting as trier of the fact; for there was no certain proof of why the deceased was lying on the track when struck, or that he was to blame for his perilous position. Different inferences on that subject were fairly deducible.

The defendant requested another declaration of law of this purport: that if, while waiting to flag an approaching train, the deceased voluntarily sat down or lay down on the track and remained there, either asleep or awake, until a train ran over him, he was guilty of exposing himself to unnecessary danger and the de-

fendant was not liable. The effect of that declaration was to exclude a recovery if the deceased voluntarily sat down on the track, fell asleep and remained there asleep until aroused by the train. Therefore, the question is whether such conduct necessarily constituted voluntary exposure to unnecessary danger. We hold it did not. For a railway employee to sit down on a railroad track while waiting to flag a train cannot be pronounced a voluntary exposure to danger under all circumstances. In most instances such an act would involve no danger, but could be done with impunity; and doubtless is done constantly. This is the essence of the whole matter; for if, while sitting on the track, an employee unconsciously should fall asleep, his doing so would not be a voluntary exposure to danger. As said in a former case, if a person should lie down, or otherwise dispose himself for the purpose of going to sleep on a railroad track, he would voluntarily incur an unnecessary danger. [Jamison v. Casualty Co., 104 Mo. App. 306.] It would be rash to presume the deceased went to sleep intentionally instead of being overcome by drowsiness. In the absence of evidence on the subject the probability is very great that if he was asleep when the train came upon him, he was in that state against his will. He knew that to go to sleep on the track was courting death and hardly would have done so unless intoxicated, of which there was no proof. In so far as the refused declaration sought to bring the case within the exception of the policy if the insured was asleep on the track, without regard to whether he went to sleep intentionally or not, it was unquestionably erroneous.

We revert to the effect on the policy if the insured voluntarily sat down on the track. As said above, such an act strikes us as prudent and attended with little or no risk—with none which the deceased was bound to anticipate and can be said knowingly to have incurred. He might go to sleep, swoon, be struck with

epilepsy or paralysis, or suffer some other visitation which would render him helpless; but ordinarily he would be as safe sitting on the track as standing there. In the Jamison case we examined the decisions to determine the meaning of a clause exempting the insurance company from liability if the insured was injured from "unnecessary exposure to danger or to obvious risk of injury." That exemption was more favorable to the insurance company than the present one, as the latter does not release the company unless deceased voluntarily exposed himself to unnecessary danger. The theory of exemption by inadvertent negligence on the part of the deceased is, therefore, excluded and the company must respond on its contract unless the deceased was killed in consequence of voluntarily incurring a needless risk. What is the meaning of that proviso in this class of contracts? The words "unnecessary danger" signify that the danger meant is one not incident to the duty or avocation of the insured; and this view consists with another term of the policy in which the occupation of the deceased was referred to and he was insured as a train porter; a hazardous calling. The words "voluntary exposure" signify that the insured must be exposed to danger with the consent of his will; which carries the idea that the danger incurred must be realized instead of unexpected. To bring the exemption into play the insured consciously, and of his own volition, must have encountered a risk of injury which he need not have incurred in the performance of his duties with reasonable prudence. The force of such provisos in accident policies has been determined in pertinent decisions which relieve the present case of all doubt. In Burkhard v. Ins. Co., 102 Pa. St. 262, it was held the company was not exempted, though the insured voluntarily did an act which exposed him to danger if he was unconscious of the danger; but that his volition must have been exercised in incurring a risk which he knew threatened

as the consequence of his act in order to bring the case within the exempting clause. In that decision the court said regarding the conduct of the insured, who was killed in consequence of leaving a train which had stopped on a railroad bridge and falling through a hole in the bridge: "It is true he voluntarily left the car; but a clear distinction exists between a voluntary act and a voluntary exposure to danger. Hidden danger may exist; yet the exposure thereto, without any knowledge of the danger, does not constitute a *voluntary* exposure to it. The approach to an unknown and unexpected danger does not make the act voluntary exposure thereto. The result of the act does not necessarily determine the motive which prompted the action. The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is accidental." Applying that reasoning to the present case, we ask why the deceased should have thought he was in danger if he sat down on the track to watch for a train? If a train came along he could step off the track and flag it, as doubtless he expected to do. The bare possibility that he might fall asleep was so remote that it cannot be treated as a risk which he knew impended and voluntarily incurred. In Lehman v. Indemnity Co., 39 N. Y. Supp. 912, the insured was killed by carelessly stepping on a railroad track without noticing an approaching train, and he was held to have been innocent of a voluntary exposure to danger within the meaning of an accident insurance policy. The court expounded the meaning of the clause in question and distinguished contracts with that clause from those providing, as the Jamison policy did, against exposure to obvious risk of injury:

"We come, therefore, to the consideration of what is meant by a 'voluntary exposure to unnecessary danger,' and this involves a definition of the word 'voluntary.' As we regard it, a voluntary performance of

an act must require an exercise of the will of the actor. In other words, it is an act done in obedience to, and regulated by, the will of the person who does it. It follows, therefore, that it must be done designedly, and not accidentally; and, consequently, one cannot be said to be guilty of a voluntary exposure to danger unless he intentionally and consciously assumes the risk of an obvious danger. [Miller v. Ins. Co., 92 Tenn. 167; Keene v. Association, 161 Mass. 149; Williams v. Association, 82 Hun 269, 31 N. Y. Supp. 343, 133 N. Y. 367, 31 N. E. 222.] The case last cited furnishes a fair illustration of the distinction which we are seeking to draw, for there the assured, in a spirit of bravado, sat down upon a railroad track, in front of an approaching engine, and, while doing so, was struck and killed. This was a conscious, deliberate act, and was, therefore, beyond all question, one which was voluntary on his part. But in the case at bar the facts are quite different. Lehman had occasion to cross the tracks, in order to reach the point for which he started; and, as he was about to consummate his purpose, a train was observed by him approaching from the south, upon the easterly track. He waited until this train had passed, and then, without taking the precaution to notice the train which was coming toward him from the north, upon the track next to him, he raised his foot and was immediately struck and killed. In this final act of Lehman's is found another and a very apt illustration of this same distinction, for when he saw that the train was coming from the south, he became conscious of existing danger, and exerted his will in order to avoid it; but, when this particular danger had passed, he unconsciously and involuntarily exposed himself to another and a greater risk, in consequence of which his life was sacrificed. Our attention is directed to an English authority, Cornish v. Insurance Co., 23 Q. B. Div. 453, which it is claimed, is precisely in point, and ought to be decisive of this case. The circumstances of the two cases are

quite similar, it is true, but there is one very marked distinction which deprives the former of any authoritative value in our attempt to decide the latter, and that distinction lies in the difference in the language of the excepting clauses of the two policies. In the Cornish case the policy excepted from the risks insured against, accidents happening 'by exposure of the insured to obvious risk of injury,' but in this case, only those which occur by reason of 'voluntary exposure to unnecessary danger.' We have attempted to show what is intended by the latter term, and, if we are correct in the views expressed, its meaning is quite different from 'exposure to obvious risk.' If that had been the language of the policy in suit, the defendant might with more reason claim that it was relieved from liability, for the risk or danger which confronted Lehman was an obvious one, whether he observed it or not; and by exposing himself to it, whether voluntarily or involuntarily, his case would have been brought within the letter, and possibly within the spirit, of the provision upon which the defendant relies.''

The case of Williams v. Association, 31 N. Y. Supp. 343, referred to in the foregoing passage, is unmistakably one in which the insured had brought himself within the exception of the policy as the facts appeared on the first appeal reported in 133 N. Y. 366. On the second appeal (reported in 31 N. Y. Supp. 343), the evidence tended to show that instead of the deceased remaining on the railroad track in a spirit of bravado, he was trying to rescue two drunken men who were in danger of being killed by an approaching train; and it was held that if this was true, his conduct did not constitute a voluntary exposure to unnecessary danger. In Johnson v. Guarantee Co., 115 Mich. 86, it was said a voluntary exposure to unnecessary danger meant a conscious or intentional exposure and included gross or wanton negligence on the part of the insured. See, too, Manufacturing, etc., Co. v. Dorgan, 58 Fed. 945;

2 Bacon, Benefit Societies, sec. 492. A case quite anal-
ogous to the present one, though much stronger in
favor of the insurance company, was Fidelity, etc., Co.
v. Chambers, 93 Virginia 138. The person accidentally
killed was sitting on a bag on a railroad track as a
train came around a curve. A witness shouted to him
and he started off the track, but reached for his bag
and. as he did so the engine struck him. It was held
this was not a voluntary exposure to danger, but. that
the deceased simply made a mistake in thinking he
could reach his bag and get out of the way before the
engine would strike him. It was further said that a
voluntary exposure to unnecessary danger meant an
act which reasonable and ordinary prudence would pro-
nounce dangerous and did not cover every act of neg-
ligence; citing, Insurance Co. v. Osborne, 90 Ala. 201.
In Traders Accident Co. v. Wagley, 64 Fed. 457, the
deceased was killed while trying to cross a track in
front of an advancing train. There was a dispute as
to how far away the train was when he started across,
and so the case was held to be for the jury, as he might
have supposed he could get over the track without
being struck. The court said: ''Whether crossing a
railroad track in front of an advancing train is or is
not 'negligence' or 'voluntary exposure to unnecessary
risk,' is a question materially dependent upon the dis-
tance to be covered by the individual, the distance to
be covered by the train and the speed at which the latter
is approaching.'' In the Dorgan.case it was held that
voluntary exposure sufficient to defeat a plaintiff's
right to recover on a policy means wanton or grossly
imprudent exposure. The general principle of these
decisions is that though the act of the insured may have
exposed him to some risk and have been careless, yet,
unless he realized the risk and voluntarily incurred it
when he was under no necessity to do so, the liability
of the insurance company for a consequent injury re-
mains intact. It is not a presumption of law that Bate-

man, the insured in the present case, realized he was exposing himself to danger by sitting on the railroad track and voluntarily chose to take the risk. If the refused instruction had precluded a recovery if the deceased remained on the track awake until it was too late to avoid the engine, the question of its soundness would be more serious. But as it defeated the plaintiff if the deceased sat on the track and remained there awake or asleep, we have no hesitation in deciding that it was rightly refused. The judgment is affirmed. All concur.