## PRINSEN v. TRAVELERS' PROTECTIVE ASS'N OF AMERICA.
### No. 752.

Circuit Court of Appeals, Tenth Circuit.
June 22, 1933.

Rehearing Denied July 27, 1933.

McDERMOTT, Circuit Judge, dissenting.

J. H. Peterson, of Pocatello, Idaho, and Harley W. Gustin, of Salt Lake City, Utah (D. Worth Clark, of Boise, Idaho, on the brief), for appellant.

Paul H. Ray and Robert L. Judd, both of Salt Lake City, Utah (Emmett M. Bagley, of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

Appellant brought this suit as the named beneficiary in a certificate of membership that had been issued to her husband by appellee, a Missouri corporation. The certificate provides for payment of $5,000 to the beneficiary, "whenever a member in good standing shall, independently of all other causes, through external, violent and accidental means, receive bodily injuries which shall solely and exclusively cause death. * * *" It is not questioned or doubted that the member James Prinsen, appellant's husband, was a member in good standing on February 3, 1931, when he came to his death in the manner stated supra in the certificate. He was killed at a highway crossing when an auto truck loaded with dynamite caps, on which he was riding, was struck by an engine of a passenger train.

The defense is bottomed on two provisions of appellee's articles of incorporation and its by-laws, made a part of the certificate by reference, which read thus:

"This Association shall not be liable to a member or his beneficiary for * * * death benefits * * * when a member is participating * * * in the moving or transportation of gunpowder, dynamite, or other explosive substance or substances; * * * when the result of voluntary or unnecessary exposure to danger or to obvious risk of injury. * * *"

After both parties had adduced evidence, the court sustained appellee's motion for an instructed verdict, and that ruling is assigned as error.

The material facts are these: James Prinsen became a member of the association in 1915. At that time he was a salesman for the Western Powder Company, and so stated in his application. At the time of his death he was a director and assistant-secretary of that company. A few days before Prinsen's death the Tintic Powder and Supply Company gave an order to the Hercules Powder Company for 300,000 dynamite caps. These three companies all appear to have business offices in Utah. The Hercules Company asked the Western Company to fill the order. The request was received by Mr. Prinsen, and he was notified at the time that Mr. Begaman would come to Salt Lake City for the caps within the next day or so. The order was received and written up by Mr. Prinsen. Within a day or so and on February 3, 1931, Begaman came with an auto truck to receive the caps. They were in a magazine north of and outside of Salt Lake City. When Begaman came Prinsen took the key to the powder magazine and went with Begaman to deliver to him the caps. Delivery being made, he got on the truck and sat on the seat by Begaman for the purpose of riding back to Salt Lake City. This seems a reasonable inference. The truck was owned by the Tintic Company. As Begaman drove easterly on the highway he came to the railway crossing, drove upon it, and the rear end of the truck was struck by the engine of the passenger train and thrown from the track. There was a terrific explosion of the dynamite caps. Prinsen was sitting on the south side of the truck by the driver. Prinsen, Begaman, and

the engineer on the railway engine were all killed, and the fireman on the engine was rendered unconscious, but later recovered. The accident occurred about 2:40 p. m. There were the usual railway warning signals at such crossing. After the collision the wreckage of the truck was north and east of the crossing in a depression below the rails approximately forty or fifty feet from the track. There are buildings about the crossing. The signs that appear on them in photographs indicate that some of them are a plant of Cudahy Packing Company. There were some obstructions of the view of the approaching train along the highway, but these were at intervals, and it is clear from the proof that Begaman and Prinsen had ample opportunity to have seen the approaching train had they looked in that direction before they reached the crossing. The fireman saw the truck when the train was about 250 feet from the crossing. The train was then moving at a speed of about forty miles per hour, and he estimated the speed of the truck at fifteen or sixteen miles per hour. He also saw two men in the truck sitting in the covered cab side by side and that the truck was loaded with boxes. The brakes were applied to the railway engine. When it struck the truck it was running at approximately twenty-five miles per hour. There was no proof, and it seems improbable that any can ever be adduced, tending to show that Prinsen or Begaman saw or heard the train.

■■ The question is whether the court erred in not submitting the case to the jury. The District Judge in ruling on the motion for directed verdict held that Prinsen "was both participating in moving and transporting these dynamite caps, and that under the circumstances of the case he voluntarily and unnecessarily exposed himself to a very obvious risk of injury." Each of the propositions thus announced constitutes a decision of fact, and we are constrained to hold that each presented an issue for determination by the jury. Participation in the moving or transportation of a thing requires action, effort, or direction. It is not an unreasonable inference that the sole purpose of Prinsen in getting on the truck with Begaman was to ride back to Salt Lake City, that he took no part in the operation of the truck, nor gave directions in that respect, nor made suggestions as to its speed, nor in any manner took part with Begaman in its operation. Of course, the dynamite caps while in the truck could not be moved or transported without moving the truck. We had occasion to consider the definition of the word "participate" in Head v. N. Y. Life Ins. Co. (C. C. A.) 43 F.(2d) 517. There is no proof as to what Prinsen did or did not do while riding with Begaman from the magazine to the railway crossing. That lies wholly in inference from the facts and circumstances of the case, and a reasonably prudent person might infer that he was wholly indifferent and passive as to Begaman's control of the truck and thereby the moving and transportation of the dynamite caps at the time of the accident. No occasion requiring Prinsen's assistance appears, unless he saw the train when the impulse of self preservation would have caused him to tell Begaman to stop. Nor does it appear to us a necessary and unavoidable inference that Prinsen in riding on the truck or in remaining there when Begaman drove it on the railway track voluntarily or unnecessarily exposed himself to danger or to an obvious risk of injury. We are not advised by any proof in this case as to the probability of explosions of dynamite caps while being transported in a truck over an ordinary country highway. Mr. Prinsen probably was informed on that subject, but we think ordinarily a court and jury are not. Nor is there proof that Mr. Prinsen knew the train was near just before the automobile was driven on the railway track. If he or Begaman knew that fact the natural impulse of Begaman would have been to stop and of Prinsen to warn Begaman that he stop. The certificate does not exclude liability should the member's death result from his negligence or occur when he was negligent. So we think it cannot be said that the only reasonable inference from the facts and circumstances of the case is that Prinsen voluntarily and unnecessarily exposed himself to an obvious risk or injury when the automobile was driven on the railway crossing.

The opinion of Judge Lurton in Mt. Adams & E. P. Inclined R. Co. v. Lowery (C. C. A.) 74 F. 463, 476, widely cited on the power and duty of a court to direct a verdict contains this:

"It seems to us to follow, from both reason and authority, that there is a difference between the legal discretion of the court to set aside a verdict as against the weight of evidence, and that obligation which the court has to withdraw a case from the jury, or direct a verdict, for insufficiency of evidence. In the latter case it must be so insufficient in fact as to be insufficient in law; in the former case it is merely insufficient in fact, and it may be either insufficient in law, or may have

more weight, and not enough to justify the court, in exercising the control which the law gives it to prevent unjust verdicts, to allow a verdict to stand. * * * We do not think, therefore, that it is a proper test of whether the court should direct a verdict, that the court, on weighing the evidence, would, upon motion, grant a new trial. A judge might, under some circumstances, grant one new trial and refuse a second, or grant a second and refuse a third. In passing upon such motions he is necessarily required to weigh the evidence, that he may determine whether the verdict was one which might reasonably have been reached. But, in passing upon a motion to direct a verdict, his functions are altogether different. In the latter case we think he cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus. If not, he should, upon the ground that the evidence is insufficient in law, direct a verdict against that party."

We do not think the evidence in the present case measures up to the rule deduced by Judge Lurton from the many controlling authorities which he reviewed.

Mr. Justice Harlan, sitting with the Circuit Court of Appeals in the Sixth Circuit, delivered the opinion in Travelers' Ins. Co. v. Randolph, 78 F. 754, 759, in which he said:

"The court may be of opinion that, according to the weight of the testimony, a verdict should be returned for the party asking a peremptory instruction. But it may not, for that reason alone, give such an instruction. It may not take the case from the jury, on issues of fact, unless the evidence is so distinctly all one way that a different view of it would shock the judicial mind."

In that opinion he also considered the import to be given to the words "voluntary exposure to unnecessary danger" in accident policies, and concluded that those words are to be held as importing an exposure by the assured to an unnecessary danger with the intention or design at the time to risk the consequences of such exposure, that those words are not equivalent of ordinary negligence, and that "a degree of consciousness of danger is necessary before there would be

that voluntary exposure to unnecessary danger required to prevent indemnity."

On the first point supra, see Slocum v. Ins. Co., 228 U. S. 364, 369, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029; Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597; Felton v. Spiro (C. C. A.) 78 F. 576; and on the second point, see Ashenfelter v. Employers' Liab. Assur. Corp. (C. C. A.) 87 F. 682; Standard Life & Acc. Ins. Co. v. Thornton (C. C. A.) 100 F. 582, 49 L. R. A. 116; Preferred Acc. Ins. Co. v. Muir (C. C. A.) 126 F. 926; Zurich Gen. Acc. & Liab. Ins. Co. v. Flickinger (C. C. A.) 33 F.(2d) 853, 68 A. L. R. 161; Whalen v. Peerless Cas. Co., 75 N. H. 297, 73 A. 642, 139 Am. St. Rep. 695; Keene v. New England Mut. Acc. Ass'n, 161 Mass. 149, 36 N. E. 891; Id., 164 Mass. 170, 41 N. E. 203; Rowe v. United Comm. Trav. Ass'n, 186 Iowa, 454, 172 N. W. 454, 4 A. L. R. 1235; Payne v. Fraternal Acc. Ass'n, 119 Iowa, 342, 93 N. W. 361; Walter v. People's Health & Acc. Ins. Co., 173 Mich. 581, 139 N. W. 865. The cases in the state courts do not appear to be in entire harmony. Diddle v. Continental Cas. Co., 65 W. Va. 170, 63 S. E. 962, 22 L. R. A. (N. S.) 779, is not in accord with those cited above. Some difference in phraseology of exempting clauses are in part at least responsible for this difference. But we think the facts in the case under consideration and the inferences that could be appropriately drawn from them made a case for the jury, and that the District Judge erred when he in effect held that on the proof plaintiff's case was insufficient in law.

Reversed and remanded.

McDERMOTT, Circuit Judge (dissenting).

In Head v. New York Life Ins. Co. (C. C. A. 10) 43 F.(2d) 517, 519, the insured met his death while riding in an airplane, but not flying it; he was not a passenger in the accepted sense of the word, for he was in the plane to get information necessary for writing a policy on the plane. Suit was brought on an accident policy which did not cover death resulting "from participation as a passenger or otherwise in aviation or aeronautics." The trial court sustained a demurrer to the petition and this court affirmed. The word "participate" was there distinguished from the word "engage," and was held to mean "to take or have a part or share in." I am satisfied with that decision and that defini-

tion. By the same token, it seems to me that one riding on a truck-load of dynamite caps is "participating in the moving or transporting thereof."

There is another reason, to me more impressive. In construing insurance contracts, the same search should be made to ascertain the intent of the parties as in other contracts, and the language used ought to be taken in its "plain, ordinary and popular sense." Chase v. Business Men's Assur. Co. (C. C. A. 10) 51 F.(2d) 34, 35. The purpose of a clause may also be looked to if the words used are not clear. Both the language and the purpose of this clause seem clear to me. There is a hazard attendant upon the transportation of explosives—a hazard which the deceased shared equally with the driver on the seat beside him. The parties intended to, and I think did, agree that such hazard was not a risk insured against.

In any event, I see nothing to go to the jury. The facts are not in dispute; in fact, they were largely stipulated. Whether such facts disclose that deceased was participating in the transportation of explosives depends upon the meaning of the word "participating," as used in this written contract, which is a question for the court and not the jury. Since I think the deceased was so participating when he met his death, I think the judgment below should be affirmed.